IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIE J. BOOKER, # B-61837, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 15-cv-00657-SMY** |
| | ) | |
| BRYAN GLECKLER and | ) | |
| TERRI ANDERSON, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Willie J. Booker, an inmate at Menard Correctional Center ("Menard"), brings this action for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The action was originally filed in the United States District Court for the Northern District of Illinois, but was transferred to this District on June 11, 2015 pursuant to 28 U.S.C. 1404(a). (*See* Doc. 5). In addition to the complaint (Doc. 1), Plaintiff has filed a motion for temporary restraining order ("TRO") and a motion for preliminary injunction (Doc. 4), as well as a motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 3). Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint.

Pursuant to 28 U.S.C. § 1915, a federal court may permit a prisoner who is indigent to bring a "suit, action or proceeding, civil or criminal," without prepayment of fees upon presentation of an affidavit stating the prisoner's assets together with "the nature of the action . . . and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). However, even when a plaintiff has tendered an affidavit of indigence that is sufficient as to form, he may nonetheless be barred by 28 U.S.C. § 1915(g)

if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

A review of documents filed in the electronic docket of this Court, and on the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov), reveals that Plaintiff has had three cases dismissed as frivolous or for failure to state a claim upon which relief may be granted.[1]  *See Booker v. City of Rkfd., IL*, Case No. 03-cv-50066 (N.D. Ill., dismissed March 27, 2003); *Booker v. Mitchell*, Case No. 10-cv-0312 (S.D. Ill., dismissed November 5, 2010); *Booker v. O'Conner*, Case No. 15-cv-50052 (N.D. Ill., dismissed April 14, 2015).[2]   As such, 28 U.S.C. § 1915(g) bars Plaintiff from proceeding IFP unless he is "under imminent danger of serious physical injury."  Therefore, for Plaintiff to proceed with this case *in forma pauperis* and on his motion for TRO, he must satisfy the Court that he is in imminent danger.

## The Complaint

Plaintiff, a convicted sex offender and former member of the Gangster Disciples, is confined at Menard Correctional Center, a maximum security correctional center in Illinois. (Doc. 1, p. 4).  He is classified as severely mentally ill and has been diagnosed with paranoid schizophrenia. *Id.*  He has been housed at Menard since 2004. (*See* Doc. 1, Ex. 2).

On December 12, 2014, Plaintiff received a letter stating that he had been declared an enemy of the people and that he had 72 hours to check himself into protective custody. *Id.*

---

[1] Court documents are, of course, public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[2] Plaintiff has filed an appeal on *Booker v. O'Conner*, Case No. 15-cv-50052.  Nonetheless, the district court's dismissal counts as a strike for purposes of 1915(g) review until such time as the strike has been overturned.  *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1761 (2015).

Plaintiff disposed of the letter. *Id.* A few days later, members of the Gangster Disciples were trying to get Plaintiff moved into a particular cell on the gallery. In "fear of his life," Plaintiff requested to be placed in protective custody, and on December 22, 2014, he was placed in protective custody. *Id.* at 5. The next day, Plaintiff was interviewed and informed staff about the threatening letter he had received, but was unable to produce it because he had thrown it away. *Id.* That night, he received a second letter, which stated, "Face [his nickname] look at the picture. We know what you are there is no cellhouse you can go in if you bring your sex offender ass out of protective custody were gonna kill you." *Id.* (errors in original). Attached to the letter was a computer printout, which contained Plaintiff's photo and information related to his conviction for aggravated criminal sexual assault. *Id.* On December 29, 2014, Plaintiff was informed that he had been denied placement in protective custody.

Plaintiff filed a grievance challenging the decision to deny him protective custody and appeared before the Administrative Review Board, including Defendant Anderson, on February 4, 2015. *Id.* Plaintiff testified that he was afraid his former gang members were going to kill him because he refused to participate in their activities and also because he refused to provide legal assistance to his former gang members. *Id.* at 6. Plaintiff was interviewed by additional staff members on later dates and provided them with a copy of the second letter he received on December 23, 2014. *Id.* at 7.

In a report dated February 4, 2015, Defendant Anderson found that there was no information available to confirm the validity of the letter and that the letter did not seem "logical." *Id.* at Ex. 2. On this basis, the Board recommended denying Plaintiff's request for protective custody, and Defendant Gleckler concurred. *Id.* at 7.

On March 20, 2015, Plaintiff was transferred out of protective custody and back into the

general population at Menard.  *Id.*  At that time, Plaintiff attempted to sign back in to protective custody, but was denied.  Plaintiff, in fear of his safety, began experiencing chest pains.  He was admitted to the health care unit a few days later.  *Id.* at 8.  While in the health care unit, Plaintiff went on a hunger strike in an attempt to prevent his return to general population.  *Id.*  Plaintiff's hunger strike lasted approximately 43 days, during which time he lost 29 pounds.  *Id.* at 10. From May 1 through May 5, prison officials force-fed Plaintiff.  *Id.* at 9.  Plaintiff ended his hunger strike on May 5 and was sent to segregation the next day.  *Id.*  Warden Butler placed Plaintiff on one-man cell status to ensure Plaintiff's safety.  *Id.*  Plaintiff remains in segregation, according to the complaint, but he still fears for his safety and refuses to come out of his cell at any time when he might have contact with other inmates.  *Id.* at 10.  Plaintiff has been diagnosed with a severe mental illness.  Plaintiff contends that his present isolation is causing his mental health to further deteriorate.  *Id.*

### Imminent Danger

The first question the Court must address is whether Plaintiff has sufficiently pled that he is in imminent danger.  Because Plaintiff has accumulated three strikes, he may only proceed without prepaying court fees, if the Court finds that he is in imminent danger.

The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id.* at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be

imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP." *Id.* at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

Although the bar for establishing imminent danger is indeed high, it is not insurmountable. In *Lewis v. Sullivan,* the Seventh Circuit cautioned that for § 1915(g) to "serve its role as an escape hatch for genuine emergencies" it must be "understood reasonably." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). The court in *Lewis* went on to explain:

> If limited to situations in which, say, a beating is ongoing, no prisoner will find solace; once the beating starts, it is too late to avoid the physical injury; and once the beating is over the prisoner is no longer in "imminent danger" . . . . Reading the imminent-danger language this way would make it chimerical, a cruel joke on prisoners.

*Id*. In another case the Seventh Circuit considered whether an allegation that an inmate is guaranteed to be returned to surroundings that will place him in harm's way is sufficient to meet the exception in § 1915(g) for imminent danger. *See Jones v. Morton*, 409 F. App'x 936 (7th Cir. 2010). In that case, the court noted that it was "inclined to agree" that a string of threats made against the plaintiff "established with sufficient probability that imminent danger awaited him" even though the plaintiff was not presently in danger. *Id*. at 937. Again, the court warned, "The timing of imminent danger is relative, particularly given the pace of litigation. We have cautioned against a 'chimerical' interpretation of imminent danger; the relevant time frame is not limited to the exact moment an inmate faces assault." *Id*.

In this case, Plaintiff claims that he has received two menacing letters from members of his former gang, one threatening to kill him if he came out of his cell. Plaintiff was in such fear for his safety that he went on a hunger strike for 43 days (and lost 29 pounds) in order to avoid being placed back in general population. These facts satisfy the Court that Plaintiff may be in

imminent danger.  Therefore, Plaintiff's motion for IFP (Doc. 3) is **GRANTED**.  The particulars

regarding Plaintiff's initial partial filing fee will be addressed by the Court in a separate order.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Having found that Plaintiff may be in imminent danger, the Court next considers the

merits of Plaintiff's claims as required by 28 U.S.C. § 1915A.  Under § 1915A, the Court is

required to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief

may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to

relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a

complaint is plausible on its face "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

To facilitate the orderly management of future proceedings in this case, and in

accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court

finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The

parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. The designation of these counts does not

constitute an opinion as to their merit.

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff may proceed on the following claims:

**Constitutional Claim**

### Count 1:          Eighth Amendment failure to protect claim

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).  In order to state a failure to protect claim, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger.  *Id.; Pinkston*, 440 F.3d at 889.  A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety.  *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Under 42 U.S.C. § 1983, a state official sued in his individual capacity may be held liable if he "caused or participated in a constitutional deprivation."  *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005).  Typically, an official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a *completed act of misconduct* does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (emphasis added). In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted).

In this case, Plaintiff alleges that prison officials' denial of his request for protective custody places him at substantial risk of serious harm.  Further, Plaintiff asserts that Defendants Gleckler (Director of the Illinois Department of Corrections) and Anderson (Chair of the Administrative Review Board) are liable because they condoned the decision to deny Plaintiff protective custody, despite having knowledge that Plaintiff's life has been threatened.  Whether Defendants Gleckler and Anderson, as top administrators, had the requisite knowledge remains to be seen.  But at this stage, Plaintiff may proceed on his claim for monetary damages against them bearing two caveats in mind.

First, state officials may not be sued for monetary damages in their official capacity in federal court.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Therefore, Defendants Gleckler and Anderson may only be sued for monetary damages, in their individual capacities. Second, Plaintiff maintains that he believes his safety is at risk; however, at this time, Plaintiff has not suffered any physical injury.  Under the Prison Litigation Reform Act, a court may not award compensatory damages for non-physical harm.  *See* 42 U.S.C.  1997e(e); *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012).  Nonetheless, Plaintiff may seek nominal or punitive damages against Defendants, if he is able to prove that Defendants exposed him to a substantial risk of injury.  *See Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) ("Prison officials who recklessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights, [and may be liable for] nominal and . . . punitive damages.")

As for Plaintiff's request for injunctive relief, a plaintiff *may* proceed against a state official in his or her official capacity for purposes of injunctive relief, but typically, in a claim for injunctive relief, the government official who is responsible for carrying out the requested relief would be named as a defendant in his or her official capacity.  *See Gonzalez v. Feinerman*, 663

F.3d 311, 315 (7th Cir. 2011).   In the context of prison litigation, the official is usually the warden of the institution where the inmate is incarcerated.   As such, Plaintiff may proceed against the Warden of Menard, in her official capacity, but not against Defendants Gleckler or Anderson.   Therefore, the Clerk shall be directed to add the Warden of Menard, in her official capacity, as a Defendant in this action for purposes of injunctive relief only.   *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d).[3]

## Supplemental State Law Claims

In addition to the Eighth Amendment claim, Plaintiff asserts two Illinois state law claims. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.   *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).   "A loose factual connection is generally sufficient."   *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's state law claims (battery and intentional infliction of emotional distress) arise out of the same events that gave rise to his federal claim.   As such, the Court will exercise supplemental jurisdiction over these additional state law claims.   Plaintiff may proceed against Defendants Gleckler and Anderson, in their individual capacities, on his Illinois state law battery claim **(Count 2)** and his Illinois state law intentional infliction of emotional distress claim **(Count 3)**.

## Motion for Temporary Restraining Order and Motion for Preliminary Injunction

Having reviewed Plaintiff's motion for temporary restraining order and motion for

---

[3]   Federal Rule of Civil Procedure 21states in pertinent part:   "On motion or on its own, the court may at any time, on just terms, add or drop a party."   Rule 17(d) provides:   "A public officer who . . . is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

preliminary injunction (Doc. 4) and memorandum in support of the motions (Doc. 11), the Court finds that the motion for temporary restraining order and motion for a preliminary injunction deserve immediate consideration. Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for temporary restraining order and motion for preliminary injunction (Doc. 4) is hereby **REFERRED** to United States Magistrate Judge Frazier, who shall hold an expedited hearing as soon as practicable, and issue a report and recommendation. The period for filing any objections to the report and recommendation shall not exceed **14 days** from the date of the report. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Frazier.

## Disposition

IT IS HEREBY ORDERED that Plaintiff's claim for damages against Defendants **GLECKLER** and **ANDERSON** on **COUNTS 1, 2, and 3** shall proceed.

IT IS FURTHER ORDERED that the Clerk of Court is **DIRECTED** to add as a Defendant, the **WARDEN OF MENARD**, in her official capacity, for purposes of injunctive relief on **COUNT 1**.

IT IS FURTHER ORDERED that Plaintiff's motion for a temporary restraining order is **DENIED**, but Plaintiff's motion for a preliminary injunction shall proceed as discussed above.

The Clerk of Court shall prepare for Defendants **GLECKLER, ANDERSON,** and **WARDEN OF MENARD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint (Doc. 1), a copy of the emergency motion (Doc. 4) and memorandum in support of the motion (Doc. 11), and this Memorandum and Order to

Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings, which shall include a determination on the pending motion for temporary restraining order and motion for preliminary injunction (Doc. 4).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge

Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 6, 2015**

s/ STACI M. YANDLE
**UNITED STATES DISTRICT JUDGE**